IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERIN L. SPENCER, | § | CV NO. 5:14-CV-00869-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| BMW OF NORTH AMERICA, LLC | § | |
| AND CARMAX AUTO | § | |
| SUPERSTORES, INC., | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER: (1) GRANTING DEFENDANT'S MOTION TO DISQUALIFY;
(2) DENYING PENDING MOTIONS AS MOOT WITHOUT PREJUDICE;
(3) AMENDING SCHEDULING ORDER

Before the Court is a Motion to Disqualify (Dkt. # 39) filed by Defendant BMW of North America, LLC ("BMW" or "Defendant"). On June 25, 2015, the Court held a hearing on the motion. Jason C. Spencer, Esq., represented Plaintiff Erin L. Spencer ("Plaintiff" or "Spencer"); J. Michael Myers, Esq., represented BMW. After careful consideration of the memoranda in support of and in opposition to the motions, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS** Defendant's Motion to Disqualify (Dkt. # 39).

1

BACKGROUND

On September 18, 2012, Plaintiff was attempting to drive her BMW X5. (Dkt. # 1–4 at 5.) Plaintiff alleges that the BMW X5's emergency brake is located at the rear of the vehicle such that a single driver cannot manually disengage the brake from the driver's seat. (Id. at 5–6.) Plaintiff alleges that the emergency brake failed to disengage. (Id.) She further alleges that when she exited the vehicle to disengage the emergency brake, it unexpectedly disengaged, causing the BMW to roll backward down an incline, thus crushing her between her vehicle and another parked car. (Id. at 6.) As a result of the accident, she has allegedly suffered serious injuries to her legs, left arm, and pelvis, which have caused disfiguring scars, body contours, and permanent pain that sometimes prevents her from walking. (Id. at 13.)

On September 10, 2014, Plaintiff filed suit against BMW and Carmax Auto Superstores, Inc. ("Carmax") in the 407th District Court of Bexar County, Texas, alleging fraud, negligence, negligent misrepresentation, and violations of the Deceptive Trade Practices Act ("DTPA"). (Id. at 8–12.) She sought compensatory and exemplary damages and attorney's fees. (Id. at 13–15.) On September 29, 2014, Plaintiff filed a First Amended Petition, setting forth the same causes of action and damage requests. (Id. at 29.)

On October 3, 2014, BMW removed the case to this Court, invoking the Court's diversity jurisdiction.  (Dkt. # 1.)  On the same day, BMW filed its answer and counterclaim, which alleges that Plaintiff's claims are groundless, brought in bad faith, or brought for the purpose of harassment.  (Dkt. # 2 at 7.)  On November 3, 2014, Carmax filed a consent to removal (Dkt. # 8), and filed its answer and counterclaim, which mirrors the counterclaim brought by BMW (Dkt. # 9).  On May 12, 2015, pursuant to an agreed motion, the Court dismissed Carmax from the suit, leaving BMW as the sole defendant.  (Dkts. ## 28, 29.)

On June 9, 2015, BMW filed its Motion to Disqualify Counsel (Dkt. # 39).  On June 16, 2015, Plaintiff filed her Response (Dkt. # 46),[1] and on June 22, 2015, BMW filed its Reply (Dkt. # 49).

## LEGAL STANDARD

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law."  In re Dresser Indus., Inc., 972 F.2d 540, 543 (5th Cir. 1992).  The Fifth Circuit considers four legal standards relevant to the resolution of a motion to disqualify: (1) the Court's Local Rules; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct (the "Model Rules"); (3) the ABA's Model Code of Professional Responsibility (the "Model Code"); and (4) the state rules of

---

[1] Plaintiff refiled her Response on June 23, 2015, because the original filing was missing one page.  (Dkt. # 50.)

professional conduct.  Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 266 (5th Cir. 2001).  If the applicable standards conflict, the Court must then "weigh the relative merits of each of the various competing disqualification rules." F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1312 (5th Cir. 1995).  Although "the relevant local and national ethical canons provide a useful guide for adjudicating motions to disqualify, they are not controlling."  Id. at 1314.

In evaluating whether disqualification is appropriate, courts are to weigh the litigant's rights and the public interest, considering "whether a conflict (1) has the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."  Horaist, 255 F.3d at 266.

## DISCUSSION

In its Motion to Disqualify, BMW argues that the Court should disqualify Plaintiff's counsel, Jason Spencer, because he is a material witness in the case on disputed facts and is Plaintiff's only witness as to the exact sequence of events leading to the accident.  (Dkt. # 39 at 1–2.)  Plaintiff counters that the applicable standards are a shield for the client rather than a sword for the opposing party; the standards were not intended for use in procedural disqualification and

should not bar representation where counsel has obtained the consent of his client and has properly provided notice to the opposing parties.  (Dkt. # 46 at 5–6.)

In the Western District of Texas, the Local Rules adopt the Texas Disciplinary Rules of Professional Conduct (the "Texas Rules") as the nonexhaustive standards of the Court, to be supplemented with the ABA's Model Rules of Professional Conduct where applicable.  W.D. Tex. Att'y R. 7(a).  The Texas Rules preclude a lawyer from continuing as an advocate "if the lawyer knows or believes that [he] is or may be a witness necessary to establish an essential fact," unless the testimony relates to an uncontested issue, the testimony is solely a matter of formality, the testimony relates to the nature and value of legal services rendered, the lawyer is a party to the action and appears pro se, or the lawyer has promptly notified opposing counsel that he intends to testify and disqualification will impose substantial hardship on the client.  Tex. Disc. R. Prof'l Conduct § 3.08(a).

The Model Rules and the Model Code are substantially the same.  The Model Rules preclude a lawyer from continuing as an advocate if the lawyer is "likely to be a necessary witness," unless the testimony relates to an uncontested issue, the testimony relates to the nature and value of legal services provided, or disqualification will result in substantial hardship to the client.  Model Rules of Prof'l Conduct R. 3.7.  Similarly, the Model Code states that "[a] lawyer shall not

accept employment in contemplated or pending litigation if he knows or it is obvious that [he will] be called as a witness," unless the testimony relates solely to an uncontested issue, the testimony will relate only to a matter of formality, the testimony will relate only to the nature and value of legal services provided, or if the refusal would create a substantial hardship because of the distinctive value of a particular lawyer or firm. Model Code of Prof'l Responsibility DR 5-101(b).

The seminal Fifth Circuit case on disqualification of an attorney expected to serve as a necessary witness is F.D.I.C. v. United States Fire Insurance Company. There, the Court disqualified one of the plaintiff's attorneys because the defendant intended to call him as a witness at trial on a point that could have voided the insurance policy in issue in the suit. 50 F.3d at 1317. The Court reasoned that disqualification was necessary, despite the plaintiff's consent to the dual role, because there would be "a tangible and unavoidable scrambling of roles" that would compromise the attorney's effectiveness. Id. The Court concluded that, because the entire law firm would not be disqualified, the disqualification of the attorney "would not work such a substantial hardship on the [plaintiff] that their cause would be unfairly injured." Id.

Here, Plaintiff concedes that Jason Spencer will be a material witness in the case. (Dkt. # 46 at 6 ("Plaintiff and her counsel have at every relevant time during the case maintained that they were aware that Jason C. Spencer[] would

6

likely be material witness in this case.").)  Indeed, Jason Spencer is not only a material witness, but a necessary one.  Defendant's theory of the case, based on Jason Spencer's deposition, is that Jason Spencer released the parking brake on the vehicle that subsequently crashed into Plaintiff without properly securing the vehicle from rolling backward.  (Dkt. # 39 at 1.)  Because there is no other party that can testify to such facts, Jason Spencer is a necessary witness.  See Horaist, 255 F.3d at 267 (holding that a party is not necessary when the information is available from another source).

However, Plaintiff argues that disqualification is nevertheless improper because Plaintiff has consented to the representation.  (Id.)  Plaintiff relies on Comments 9 and 10 to Texas Rule 3.08, which state that the rule "is not well suited to sue as a standard for procedural disqualification," but that it "may furnish some guidance in those procedural disqualification disputes where the party seeking disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles."

While the Texas Rules and the comments thereto certainly provide guidance for the Court, they are not controlling; rather, the Court must follow federal law.  U.S. Fire. Ins. Co., 50 F.3d at 1312.  Federal law, as set forth by the Fifth Circuit, has made clear that procedural disqualification is an appropriate remedy, even where the plaintiff has consented to the representation, if the attorney

is a necessary witness and the balancing of prejudices weighs against representation.  See id. at 1317; In re Duke Invs., Ltd., 454 B.R. 414, 425–26 (Bankr. S.D. Tex. 2011) ("Because the Fifth Circuit has held that the client-consent exception does not automatically resolve the Motion to Disqualify in the nonmovant's favor, and because this Court is bound by Fifth Circuit precedent, even though Amegy unequivocally consents to Stohner's continued representation despite possible substantially adverse testimony, any decision by this Court denying the Motion should preferably be made on some other basis.").

Plaintiff maintains that the balancing of prejudices weighs against representation because disqualification will subject Plaintiff to an undue hardship,[2] and Jason Spencer's interest in the litigation, both as the owner of the vehicle in question and the husband of Plaintiff, will be obvious to the jury and his testimony will therefore be credited appropriately.  (Dkt. # 46.)  The Court is sensitive to the difficulty in securing counsel and the prejudice Plaintiff may suffer from the disqualification of her counsel.  See U.S. Fire Ins. Co., 50 F.3d at 1313 ("Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.").

---

[2] In Plaintiff's Notice of Undue Hardship, which Plaintiff attached to her Response as an exhibit, Plaintiff states that "she attempted to have her case accepted by numerous attorneys and law firms in San Antonio," but "was unsuccessful in obtaining a lawyer who was willing to take her case.  (Dkt. # 46, Ex. 4 at 3.)

Nonetheless, permitting Jason Spencer to continue as trial counsel poses a serious conflict. As a necessary witness, Jason Spencer will be called to testify as to his role in the accident that ultimately injured Plaintiff. Moreover, Jason Spencer has been named as a responsible third party. Any liability attributed to him as a responsible third party will therefore reduce the award he can secure for Plaintiff.[3] Presumably, Jason Spencer will therefore need to discredit testimony that Defendant elicits from him regarding his role in the accident, which will significantly affect his effectiveness at trial and unnecessarily confuse issues to the detriment of Plaintiff.

      This is precisely the circumstance in which the dual roles as witness and as lawyer conflict and in which courts have concluded that disqualification is necessary. See U.S. Fire Ins. Co., 50 F.3d at 1317 (holding that participation as an advocate and witness would compromise the attorney's effectiveness and needlessly confuse his role where the defendant would call the plaintiff's attorney

---

[3] The finding of fault against a person designated as a responsible third party does not impose liability on that person and cannot be used in any other proceeding as a basis to impose liability. See Tex. Civ. Prac. & Rem. Code § 33.003(a), (i); JCW Elecs., Inc. v. Garza, 257 S.W.3d 701, 702 (Tex. 2008). Accordingly, Jason Spencer's role does not create the type of conflict that it would have, had he been named as a third-party defendant. See, e.g., Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 234–35 (S.D.N.Y. 2010) (disqualifying attorney where the attorney had been named as a third-party defendant because he "could not reasonably be expected to maintain full candor with the Court and advocate zealously for his clients when he could be found liable if his clients are successful"). Nonetheless, because Jason Spencer would be in the position of discrediting his own testimony, the dual roles conflict.

to prove a defense); Ayus v. Total Renal Care, Inc., 48 F. Supp. 2d 714, 717 (S.D. Tex. 1999) (disqualifying defendant's attorney because the attorney had previously prepared letters, about which Plaintiff required testimony to prove his case). Accordingly, the Court **GRANTS** Defendant's Motion to Disqualify (Dkt. # 39).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Disqualify (Dkt. # 39). All pending motions (Dkts. ## 24, 27, 35, 43, 44, 45, 48) are hereby **DENIED AS MOOT WITHOUT PREJUDICE.** Finally, the scheduling order is **AMENDED** to extend deadlines in the case ninety (90) days as follows:

1. The parties shall complete all discovery on or before **September 1, 2015.** Counsel may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances, and no trial setting will be vacated because of information obtained in post-deadline discovery.

2. The parties shall file all motions to amend or supplement pleadings or to join additional parties by **September 23, 2015**.

3. All parties asserting claims for relief shall file their designation of testifying experts and shall serve on all parties, but not file, the materials required by Fed. R. Civ. P. 26(a)(2)(B) by **September 23, 2015**. Parties resisting claims for relief shall file their designation testifying experts and shall serve on all parties, but not file the materials required by Fed. R. Civ. P. 26(a)(2)(B) by **October 23, 2015.** All designations of rebuttal experts shall be designated within fourteen (14) days of receipt of the report of the opposing expert.

4. An objection to the reliability of an expert's proposed testimony under Federal Rule of Evidence 702 shall be made by motion, specifically stating the basis for the objection and identifying the objectionable testimony, within thirty (30)

days of receipt of the written report of the expert's proposed testimony, or within thirty (30) days of the expert's deposition, if a deposition is taken, whichever is later.

5. All dispositive motions shall be filed no later than **September 29, 2015**. Dispositive motions as defined in Local Rule CV-7(c) and responses to dispositive motions shall be limited to twenty (20) pages in length. Replies, if any, shall be limited to ten (10) pages in length in accordance with Local Rule CV-7(e). If parties elect not to file dispositive motions, they must contact the courtroom deputy on or before this deadline in order to set a trial date.

    **IT IS SO ORDERED**.

    **DATED**: San Antonio, Texas, June 26, 2015.

_____
David Alan Ezra
Senior United States Distict Judge